OPINION OF THE COURT
Shirley R. Levittan, J.
This case presents the court with a unique legal issue, the criminal liability of defendant for the death of another, when the car, in which defendant is a passenger is involved in a high-speed chase with the police, collides with another vehicle, resulting in the death of its driver. However, the answers to legal questions can at times best be determined by studying the factual events and the human beings involved. Legal issues are given birth by the realities of everyday life and can often be resolved by viewing them under such realistic standards.
In a four-count indictment, defendant is charged with the crimes of manslaughter in the second degree (Penal Law § 125.15), assault in the first degree (Penal Law § 120.10), reckless endangerment in the first degree (Penal Law § 120.25), and criminal possession of stolen property in the first degree (Penal Law § 165.50). It is alleged that defendant was a passenger in a stolen vehicle driven by Sergio Caputo, which was involved in a high-speed chase with city police officers. This chase ultimately resulted in the death of Robert Williams when the vehicle in which defendant was a passenger collided with the Williams vehicle. Following defendant’s jury waiver, a trial was con *1024 ducted before this court. The relevant facts presented by the People are as follows:
On November 9, 1983, at approximately 10:15 p.m., Police Officers Cully and Perlov were on uniform motor patrol proceeding south on Amsterdam Avenue in the area of 136th Street. As Officer Perlov was driving, she observed a grey late model Lincoln Continental with Jersey license plates parked on the opposite side of the road facing north. She also observed defendant standing outside the vehicle allegedly talking to a black man on the sidewalk. The officer slowed her vehicle, made a U-turn and, while doing so, observed defendant stumble as he walked toward the Lincoln.
According to the officers, they then pulled their vehicle behind the Lincoln and Cully exited the motor patrol car from the passenger’s side approaching the driver’s side of the Lincoln. Officer Cully testified that when he reached the driver’s side of the Lincoln the windows were down and he asked the driver, Caputo, for his license, registration, and insurance card. He also stated that when he looked into the vehicle he observed a grey metallic looking object in defendant’s hands (who was then seated in the passenger’s seat). After Officer Cully informed Officer Perlov defendant had something in his hand, both officers testified they observed defendant slouch back into his seat and say to Caputo, “Gun it.”
At that point it is alleged Caputo threw his door open hitting Officer Cully in the left knee, then the Lincoln screeched off, proceeding north on Amsterdam Avenue. The officers returned to their car with Perlov again driving and began to pursue the defendants. What ensued was a high-speed chase covering approximately 30 blocks at speeds up to 60 miles per hour. At one point defendant’s vehicle jumped the curb. At 165th Street and Riverside Drive the officers lost sight of the Lincoln. Shortly thereafter they received a radio transmission directing them to 164th Street and Amsterdam Avenue. When they arrived at that location they observed the Lincoln had been involved in a serious accident with another car. Defendant was removed from the Lincoln through the driver’s side rear window after the window was broken by another officer’s nightstick.
In his defense, defendant called to testify Sergio Caputo, the driver of the Lincoln, who had previously pleaded guilty to this indictment and to another indictment charging him with assault on a police officer. Caputo testified that he first saw defendant late in the afternoon on November 9,1983. At approximately 5:00 p.m., Caputo and defendant were given a ride by a friend to Fort Lee, New Jersey. After hanging out for a while, *1025 Caputo noticed a grey 1983 Lincoln Continental pull up and park in front of a candy store. The driver exited the vehicle and went into the store leaving the car doors unlocked and the engine running. Within seconds Caputo went over to the Lincoln and got in and signaled for defendant to join him. At first defendant hesitated, but after being called by Caputo a second time, he entered on the passenger side and the two drove off together.
Caputo and defendant continued to drive in the automobile for nearly five hours through several towns in northern New Jersey listening to the car radio and conversing. At around 9:45 p.m. Caputo drove into Manhattan and went to Union Square Park where defendant exited the vehicle and purchased narcotics. Caputo then informed defendant that he was going to attempt to sell the car in Manhattan. As they began to drive uptown, defendant again exited the car to purchase some beer, and, at a subsequent point, remained inside the car when Caputo went out to look in the trunk.
Caputo testified that after driving uptown he double-parked the car so defendant could get out to relieve himself. As he sat in the car with the engine running he was surprised by a knock on the driver’s window. Glancing to his left Caputo observed a female police officer standing outside the car. According to Caputo, who was on parole at that time, I “immediately panicked. I drew the car from park to drive and took off.”
As for defendant, Caputo stated “he just got into the car in the nick of time. Otherwise, he would have still been standing there.” At no time did defendant say anything to Caputo or attempt to direct him during the chase.
To find defendant guilty of the crimes of manslaughter in the second degree, assault in the first degree and reckless endangerment in the first degree, the People have to prove beyond a reasonable doubt that defendant acted with the culpable mental state of recklessness.* As evidence of defendant’s guilt the People rely almost exclusively on the testimony of the officers that defendant said to the driver of the car, “Gun it.” According to the *1026 People, this statement “set in motion a high-speed chase through city streets which resulted in a terrible crash and the tragic loss of a life.”
The People rely on People v Madison (242 Cal App 2d 820, 825-826, 51 Cal Rptr 851, 855 [1966]), where a California court upheld the defendant’s conviction for manslaughter in circumstances significantly akin to the case at bar. In Madison the defendant, a passenger in a car driven by a friend, encouraged the driver to chase a second car driven by a person defendant had a known grudge against. During the 20-minute chase defendant made statements such as “Get him, Bill” and “Don’t lose him, Bill” (p 823). Ultimately, the car which the defendant was pursuing crashed and its driver was killed. The court held the defendant was guilty of the crime of manslaughter as an aider and abettor (People v Madison, supra, at p 827).
This California case is readily distinguishable. There, the passenger was the persistent instigator of the chase. Here, the only words which the prosecution can rely upon — if indeed they were uttered — are “Gun it” — two words which, according to the driver, he did not hear and which actually had no effect on the driver’s conduct.
It is impossible to credit completely the officers’ testimony as to what occurred on Amsterdam Avenue that evening and therefore the court is not convinced that defendant even said “Gun it.” Much of what the officers testified to seems unlikely. For example, it is unlikely that the officers would exit their motor patrol car and cross in front of their vehicle so that Officer Perlov, who was the driver, approached the passenger side of the Lincoln and Officer Cully, the recorder, approached the driver’s side. Then after the Lincoln sped off, they crossed again so Officer Perlov resumed driving. Furthermore, it is curious that on a chilly November night the defendants would have the windows down in the car so that the officers could hear defendant say “Gun it”, only to roll the windows up during a high-speed chase so that after the crash the windows had to be broken to take the defendants from the car.
On the other hand, the court found the testimony of Sergio Caputo, for the most part, to be credible. He seemed remorseful and his answers were not exaggerated. Caputo testified that he never heard defendant say anything to him or in any way direct him during the chase. He also testified he initiated the chase when he “panicked”.
As a result, the court finds defendant not guilty as to the first three counts of the indictment and not guilty of the lesser *1027 included crime of criminally negligent homicide (Penal Law § 125.10).
As to the fourth count of the indictment, criminal possession of stolen property in the first degree (Penal Law § 165.50), the court finds that defendant’s guilt has been established beyond a reasonable doubt. Penal Law § 165.50 reads as follows: “A person is guilty of criminal possession of stolen property in the first degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds one thousand five hundred dollars.”
As in People v Bolling (60 AD2d 655 [2d Dept 1977]) and People v Howard (37 AD2d 178 [3d Dept 1971]), where sufficient evidence existed to hold the passenger of a stolen vehicle guilty of possession of stolen property, similar evidence exists here. After being dropped off in Fort Lee by a friend, defendant was with Sergio Caputo when the owner of the Lincoln drove up and went into the store. When Caputo first called for defendant he hestitated before entering the car. Defendant and Caputo drove in the vehicle for approximately five hours and during this time Caputo told defendant that he would try and sell the car in Manhattan. Also, defendant got out of the car three times and on each occasion, the last of which was immediately before the chase began, he voluntarily returned. Once he remained inside the vehicle when Caputo got out to check the trunk.
This evidence, coupled with defendant’s statements, proves beyond a reasonable doubt that defendant is guilty of criminal possession of stolen property.

 “Recklessly” is defined in Penal Law § 15.04 (3) as follows: “A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.”